or is this not specific to Mr. Scholders being the VP of Finance? Thank you. And may it please the Court, Counsel. My name is Patrick Scholders. I am here with my partner, Gene Blanton, on behalf of Pacific Life Insurance Company. Have you reserved rebuttal time? I have, Your Honor, three minutes. As this Court no doubt knows, this is not the first time this breach of contract action has been before this Court during its six years of continuous litigation. In Pacific Life 1, I'm calling your first opinion, Pacific Life 1, which was decided in April of 13, this Court reversed the District Court's entry of summary judgment in favor of BB&T, holding that it was improper to ignore the language in the Pacific Life policy and that the critical language which conditioned a policy owner's surrender request was the phrase, satisfactory to Pacific Life. You concluded that opinion by remanding the case, quote, for further proceedings consistent with the opinion. Unfortunately, we're here today because the proceedings in the trial court, the trial of this action, were absolutely inconsistent with this Court's opinion, and the District Court erred as a matter of law in three distinct ways, each of which we submit mandates reversal. First, in ruling and instructing the jury that John Hancock was the owner of the policy on September 8, 2008, a day, I need to point out and probably will say more than once, before Pacific Life even knew these documents had been signed, before they ever opened the envelope on September 9, 2008, the trial court changed the issue that you said was to be tried. You told us to try whether Agent Kozot's signature should have been satisfactory to Pacific Life without our notary juror. The first opinion recites the facts very clearly and very well. There was evidence that perhaps Pacific Life had recognized Kozot, had sent him account statements, but the court also recognized that Pacific Life did not have Kozot's signature on file. That was the issue that was to be tried. The Court's finding that Pacific Life, that in fact John Hancock was the owner, changed the trial to whether Kozot's signature was even required at all. Is it a problem for you that you previously argued that John Hancock was the owner of the policy? And actually, Your Honor, we never really, I know that statement has been made, we never really made that argument. We have always separated assignment from owner. There is some quote from the first brief in a summary judgment which you have reversed, there is no quote from the reply briefs. The policy distinguishes between assignment and ownership. We have distinguished between assignment and ownership. The law distinguishes between assignment and ownership. Well, if you thought BB&T was the owner, then why did you direct the correspondence? Why only direct that to John Hancock? After the request was made and when Vera Hernandez sent out the request for the notary jurat, she sent it certainly to the assignee, John Hancock had been sent at the same time, sent it to BB&T and by September 16th, that notice was in fact sent to BB&T and certainly by October 1st, BB&T acting as owner is on the phone asking why the 1035 exchange had not been processed. It is interesting that BB&T... Was the September 16th correspondence exactly the same as the earlier correspondence? I think it was not. I think I may be confused. There is an email that goes from John Hancock to BB&T in North Carolina. Clearly by October 1, everyone was on notice. BB&T filed this suit as owner, seeks the damages here as owner, made the decision later in December as owner to submit the form and asks you to award the judgment to BB&T. I think any distinction here between us admitting ever that they were the owner is really hot air. So what is the difference between an assignee and an owner in this context? Generally, obviously if I buy a car, I borrow money from the bank, I pledge the title, assign the title to the bank as collateral. We do that with a mortgage on our house, but that does not give the bank the right to sell the car as long as I make the payments. In the case specifically to the policy under the definition sections, it makes clear that under an assignment, and I am quoting, the policy may be assigned at any time. Pacific Life is not bound by any assignment. We are not responsible for the validity of any assignment. The magic words written request are nowhere found under the assignment definition in the contrary. A change of beneficiary, a change of ownership, and a surrender request all require action on behalf of the owner. And that is why it is significant that the trial court as a finder of fact after remand made that decision for the jury. The second issue which requires you to set aside the judgment here is in your first opinion, you declined to address whether the district court correctly determined damages. That allowed the district court frankly to reinstate its original judgment on damages, which did not apply the duty to mitigate damages, which has been firmly established in Kentucky law, in fact in the law of all 50 states under the restatement of contracts for more than 100 years. It held that mitigation was inapplicable. Third, despite the unchallenged finding that applying any factors here awarded pre-judgment interest, which we believe was in error, certainly if the damage calculation is wrong, and awarded post-judgment interest at a Kentucky rather than a federal rate. Let me revisit issue one more to your questions, Judge. The court heard as a matter of law when it instructed the jury that John Hancock was the legal owner of the policy on September 2008. You have seen that instruction. It says, the court has already determined the following, reading this to the jury, as of September 8, 2008, John Hancock was the legal owner of the life policy. And I just cannot understate the significance of that error. And I think... Is that based on his interpretation of Farmers Bank? I don't... Which appears to say that in a 1035 exchange, the S&E is the owner. And you all... Don't you disagree with that? I disagree that that case has any application here, as you did in Pacific Life 1. That case is under a different insurance policy with a different language. The S&E is most assuredly not the owner on the clear language, which this court has said cannot be ignored, that the policy language must be upheld, is applicable here. But you... I'm struggling with why that's different, because if under Farmers, you make an assignment and the S&E is the owner, the reason that... You don't contest the assignment. What you say is that in our case, the S&E is not also the owner because we have a satisfaction requirement that differentiates it. I mean, is that why you think Farmers doesn't apply? Well, if I understand your question, yes, clearly. Our policy says only an owner can make a surrender request, not an S&E. The owner, under the definition of surrender... But my question is, Farmers indicates that they are one in the same. An S&E is an owner in a 1035 exchange. Why would that not apply irrespective of other requirements? I think Farmers and the 1035 exchange talks about an assignment, a change of beneficiary, a surrender request in order to complete a 1035 exchange. In Pacific Life 1, you here said the parties agree and the parties do agree that the policy was assigned from BB&T to John Hancock. But let me just, at that point, ask you this. If the language assigns and transfers absolutely all right, title, and interest in the policy, which you don't disagree that that's the language? Absolutely. On John Hancock's form. What's left to the S&R? I think that, again, we have to keep in mind that there are three parties here. Whatever John Hancock and BB&T agree to is between the two of them. They're the parties to that assignment. Pacific Life is not a party to that assignment. Pacific Life has never even seen the form. It was John Hancock's form. We didn't get a chance to negotiate that. We opened an envelope with forms signed by these two parties. What right would Pacific Life have had to deny the request when it came in? It had the right, as this court has found, to condition a surrender upon written request by you, you may surrender the policy. Written request says a writing satisfactory to us. So there would never be a time, in your view, that an S&E could surrender the policy? An S&E that has not yet been approved as the owner of the policy to change my contractual rights, Pacific Life's contractual rights, we get to have a dog in that fight. Our policy says, if you want to change owner, different than assignment. What dog do you have? So if you decide that you don't like the signature, that means you don't ever have to pay? No, no, no, no. It means that you can surrender it, and you can change owner, if you submit a written request satisfactory to Pacific Life. To Pacific Life, you called, in your opinion, you called, quite correctly, John Hancock a third party. And they were a third party. What does the law of the case require if we were just wrong in that opinion? The law of the case, I think, is quite clear. You weren't wrong. Well, I know you don't think so, but it's entirely possible that others might. Well, you said, a reasonable mind could conclude, under the complex circumstances of 1035, Pacific Life's request for a notarized signature of COSAT before surrendering the policy to a third party. That'd be John Hancock. A third party to this contract between BB&T was proper, which is quite consistent with the policy language, which is the law of the case. So my question was, what does the law of the case doctrine require if it became the considered opinion of the panel now stuck with this case that the first panel was wrong? Well, I assume that this panel now stuck with this case, if it decides that the first panel was wrong, can write the opinion that it believe correctly applies the facts of this case to the law and the policy language. I don't believe this panel would find that the language in this insurance policy can be ignored. And the language in this insurance policy says you can't change owner and you can't surrender a policy unless your writing is approved by us or satisfactory to us. And you found that that was an issue of fact. My time, this is showing zero. I would simply say that mitigation of damages applies in all breach of contract cases unless it's a very slim exception. And the exception that the court relied upon here has been limited by Kentucky to a real estate case involving a lease. And finally, I think you know that the interest applied here, certainly post-judgment, was incorrect. I have reserved three minutes and this says zero. We'll have them. Thank you, counsel. May it please the court, counsel. My name is David Calhoun. I represent Branch Banking and Trust Company in its capacity as the trustee of the Brown Irrevocable Life Insurance Trust. We are the appellee here. Before I start in on my argument, let me, if I may, address a couple of points that Mr. Shoulders made. He first told the court that we, being Pacific Life, never argued that the assignment of the policy changed ownership to John Hancock. Memory is a faulty thing. So let me remind Mr. Shoulders what exactly Pacific Life argued in the district court. I'm quoting from their summary judgment brief, which is document 22-2 in the record, page ID number 139. BB&T is correct that the Pacific Life policy requires Pacific Life to send any premium or other notice regarding the policy to the policy owner, citing the complaint in paragraph 29. However, BB&T incorrectly alleges that BB&T, as trustee of the trust, was the Pacific Life policy owner. Again, quoting the complaint, our complaint, paragraph 29. BB&T had previously assigned, quote, absolutely all right, title, and interest in the Pacific Life policy, close quote, to John Hancock. Accordingly, BB&T was no longer the Pacific Life policy owner. Pacific Life complied with the terms of the Pacific Life policy and directed the correspondence to John Hancock, the Pacific Life policy owner, as a result of BB&T's execution of the absolute assignment, end of quote. In not answering the court's questions about what was assigned, if not ownership of the policy, Mr. Shoulders again referred to a collateral assignment. Now, we all know there was no loan, there was no financing agreement here. This was a 1035 exchange, which, to comply with IRS requirements, requires that you first transfer ownership of the policy from the original policy owner to the new insurance company that's going to issue a replacement policy, so that it is entitled to receive the surrender proceeds out of that first policy. This is done so that the money never even, so that the original policy owner is exchanging policy, never even receives constructive receipt of the monies, because if they do, the IRS deems it a taxable event. There was no collateral assignment here. In its original opinion, in BB&T 1, the court said there are three steps to a 1035 exchange. At page 3 of that opinion, the court listed those steps as, first, BB&T transfers ownership of the Pacific Life policy to John Hancock. Second, after the ownership change is effective, John Hancock surrenders the PL policy, the Pacific Life policy, and uses the proceeds to purchase a John Hancock policy. Finally, John Hancock assigns the new policy to BB&T, and then the court went on at page 6 of that opinion, this court, in its previous opinion, and said the parties agree that BB&T validly assigned the Pacific Life policy to John Hancock. However, the parties disagree as to the effectiveness of the surrender. So the notion that this court's, the law of the case of this court's previous opinion was that the transfer of ownership was not effective and that the district court erred by instructing the jury to that effect is simply wrong. I believe the court, the district court, put that instruction in there to make clear to the jury that the fact that the ownership occurred and the fact that Pacific Life failed to send notice of the additional requirements directly to BB&T was not in and of itself, did not in and of itself allow the jury to find that Pacific Life had acted unreasonably. Because the jury still had to answer the first question of instruction number one, which of course Pacific Life doesn't want to focus on, what the court told the jury was the only question before you today is whether Pacific Life was reasonable in requiring title and corporate seal or notary with Walter Kozot's signature to complete the surrender request. That was taken right from this court's opinion in BB&T 1. The court then says Pacific Life may impose reasonable requirements to satisfy itself that a surrender request is legitimate. Pacific Life's requirements are reasonable if they were objectively satisfactory from Pacific Life's perspective. Then the court gave the jury the three findings it had already made. And again I believe that was to make clear to the jury because it was going to hear evidence that on September 9th Pacific Life sent one letter to BB&T addressed to Mr. Kozot, the fellow whose signature they were trying to verify, saying that John Hancock has informed us that your policy will be replaced by a John Hancock policy and then explained some dire consequences that may result from surrendering the policy and then said at the end of the letter if you decide to cancel your surrender request please notify us. And they got no call from BB&T from Walt Kozot saying that's erroneous. We're not surrendering this policy. We're not doing a 1035 exchange. The other letter on the same day at the same time they sent was addressed only to John Hancock saying we've got these additional requirements. We will require a corporate or notary seal on Walter Kozot's signature before we'll process the 1035 exchange. Now although there is this logical inconsistency in why Pacific Life considered Mr. Kozot's signature adequate and satisfactory for an assignment of transfer of ownership of the policy and then why they were questioning it when the new owner John Hancock whose signatures are all they were all satisfied with those signatures when it goes to surrender the policy why they then are questioning Kozot's signature after the ownership change is effective. That's a logical inconsistency that they created for themselves with their own story with the argument I just read to you and the court accepted that. The district court accepted it and this court in its last opinion accepted that. But the focus of this case was on the fact that when we submitted when BB&T had John Hancock submit the 1035 paperwork on September 9th a fellow named Swain Beard who testified at trial signing it on the face of the document it says signature of agent slash registered representative as witness. The evidence at trial was that this it is a requirement of Kentucky law that Kentucky Department of Insurance mandates that all life insurance applications in Kentucky bear the signature of the agent as witness to verify the applicant's signature. You cannot substitute a notary seal or corporate seal in Kentucky. The Department of Insurance mandates and that evidence was presented to the jury. John Hancock their manager of their 1035 exchange department a fellow named Jonathan Squire testified by deposition it was a video deposition played at trial which is in the record and he testified that they always John Hancock exclusively verifies the original owner's signature on the assignment form by using their agent to that signature and it shows right on the form that he is signing as a witness. Then Mr. Squire signs below accepting the assignment on behalf of John Hancock confirming that he is accepting his agent's representation that is a legitimate transfer of ownership a legitimate assignment. Now Ms. Hernandez. The John Hancock absolute assignment form lists as owners Charles and I-L-I-T which is I assume irrevocable life insurance trust. What role does that play that the assignment lists them as owners? Let me find that your honor. I believe they are merely the insured lives. I think the assignment forms all show that the owner the original owner was the trust. Which would be the trust the original owners and so how explain to me the relationship to the arguments about ownership here between your form statement and John Hancock's ownership. Well again your honor I believe the absolute assignment form shows the proposed life insured is Charles A. Brown Jr. and Elise A. Brown. They are the life that is insured. They are not the owners of the policy. If trust owned it then says if trust owned provide full name of trust and name of trustees and that is where it says BB&T Wealth Management. As the trustee who owned the trust? That's correct your honor. Does this suggest that ownership and assignment are different? No your honor. Why not? Well in this context in the context of a 1035 exchange what else would you be assigning? I mean in law I believe there are two different kinds of assignment that I'm aware of. An assignment is collateral and assignment of ownership. As the form itself states we are assigning all right title and interest in the above existing policy to John Hancock. I mean there's no collateral involved in this situation. 1035 exchange is extremely common. Ms. Hernandez their representative who processed this says her department processes between 10,000 and 20,000 of these a year. All insurance companies do this the same way. It is always you assign the policy the original owner assigns it to the replacing insurance company which then surrenders the policy, receives the proceeds, funds the new policy and puts the policy in the original owner's name. It's a way to transfer exchange life insurance policies without having a taxable event. Certainly it's common. What does this Pacific Life's policy written requirement that the satisfactory to it? What in the context of a regular 1035 exchange would that mean? Well I think it's clear from the first panel's opinion that they're entitled and I think this comes through in the court's instruction the district court's instruction. They're entitled to satisfy themselves that this is a legitimate transaction that the original owner of the policy is indeed making a 1035 exchange with another insurance company and they are entitled to satisfy themselves of that. The problem was they rejected the form of signature verification that we provided which was having the agent sign as witness and instead imposed a requirement for a corporate seal or notary. The evidence at trial established number one nothing in their policy or in the policy perspective says that policy perspective said we may require. It was an unreasonable request. It was unreasonable because we provided actually the proof of trial was very clear that having the agent who is licensed by the state who's been vetted by the insurance company actually witnessed the signature is more reliable than a notary which can easily be faked. We had a retired FBI agent who had used fake corporate notary seals many times. He showed this to the jury and obviously they were persuaded. Why wasn't the paperwork submitted on October 1 with the same sort of letter that was sent because well I think at first they were just trying to decide how to react and they tried at first making having their counsel write a letter. They really thought Pacific Life being a reputable life insurance company was going to change and see that it was making a mistake. They first had their in-house counsel write a letter demanding that the transaction that exchange be processed with the original date the September 9th date and that the full surrender proceeds be paid out. When Pacific Life refused they then filed complaints with state insurance departments which you know in hindsight I think they realized that was a useless endeavor and when that didn't pan out they finally with a reservation of rights letter sent in the notarized requirement and said we will sue you for this. Let me move on to the damages issue. The damages were liquidated. The remedy you know the obviously a breach of contract case the remedy is to put the injured party the injured by the breach back in the position they would have been but for the breach. If Pacific Life had completed the 1035 exchange effective September 9th and the jury determined that Pacific Life received a satisfactory request on September 9th the policy specifically says that the policy terminates on the date that a satisfactory surrender request is received. The jury determined that was September 9th therefore under the terms of the policy Pacific Life owed was required to pay out the full surrender value as of September 9th and that was about $780,000. Instead they only paid out about $523,000. Could you address the mitigation claim? Yes your honor. That's what we're here about. It's the decline in value between the $56,000 and the $260,000. Well I think as this court's opinion framed the question in the first appeal was the issue here whether their requirements were satisfactory or not. The court said to put it another way whether Pacific Life in fact received a satisfactory request on September 9th. The jury's verdict was that Pacific Life's requirements were not reasonable and therefore that they received a satisfactory request on September 9th. Under the terms of the policy Pacific Life is it's a promise to pay a certain sum of money. The value of the policy on that date by law they're required to value any variable life insurance policy at the close of the markets every single day. Did BB&T retain the authority to alter the investments between September and December? They contend that we did. And what do you say? Well if the ownership changed which we didn't realize they considered the ownership change effective until we got their summary judgment brief and said well that's their position. They always told us they never said who they thought the owner was before that. So given that they had actually considered the change of assignment or the change of ownership effective I'd say no we didn't actually have the authority. I don't know whether they would have complied with a request or not. I'm sure they'll tell you now that they would have. As far as interest I'm out of time your honor if you care for me to if you Here's what the summary judgment briefs said. Surrender requests were required to be signed by the owner of the Pacific Life policy. Undisputably the Pacific Life policy permitted Pacific Life to impose the requirement that the assignment and 1035 exchange forms contain the signature of John Hancock and BB&T representatives because the trust was still the owner of the Pacific Life policy. That is our position. That is the language of the policy. It has never changed. You said we need to breach a contract ought to refer to the contract. Here's what the contract says. Owner. The owner of this policy is shown on the policy specification page. That is BB&T. A change of written request. What is a written request? A writing signed by you. You is defined as the owner. That is satisfactory to Pacific Life. You ask us to try that case. We did try that case. However they were able to argue because the trial judge asserted himself as the finder of fact. They were able to argue and I quote from Mr. Calhoun's opening statement. They got a surrender request signed by the owner. The owner was John Hancock. They asked for something they were not entitled to under the policy language. Cross-examination. Vera Hernandez. So it's the signature of the owner. It's the owner. Correct? Yes. The owner of the Pacific Life policy. Correct? Well Vera said it's not the signature of the owner though. The policy owner is still the trust. Mr. Calhoun. Well I'm sorry Ms. Hernandez. The court has overruled you and said that the owner is John Hancock. This case was tried on a different issue than what you sent it back for. It was not tried on the validity or whether or not we needed a notary or whether we had facts sufficient. The owner of the policy was BB&T. The plaintiff in this action is BB&T. The party seeking damages is BB&T. As for the mitigation question, members of this panel, the stock market in the last four days has fluctuated 400 points. Down 200 and up 200. This is a textbook example of when mitigation should apply. When the values of damages are controlled by as volatile a measurement as the market or the securities market, I can't give you a hypothetical that it would make mitigation more appropriate. You don't get to the damage number here of two. What capacity did Pacific Life have to mitigate the losses in that policy before the December letter? Accepting what they believed in good faith and there's no issue here that they never acted but in good faith to accept a form which they felt was not satisfactory. That's the only capacity. The policy makes clear that the risk of loss remains with the owner, that the owner is the sole party regulated by the SEC and federal statute, the only party that can make investment decisions in that policy. Remember throughout this entire period until they signed that form and benefit was fully in effect. Nobody's claiming that John Hancock, the new quote owner in their argument, had issued a new policy. They had not. There was a death penalty. This contract was in effect between the two parties originally to it. They wanted to do a tax exchange. We get that. We believed that we had the right to have a notary juror. If that was wrong, then as the related to the liquidated damages? The liquidated damage, well you mean their contention that the damages were set on September the 9th? Well the only way you get to the figure that's awarded here is to subtract from that number the value of the policy at whatever date they decide to send in the form. If the jury's correct in a real trial over the notary, if we guessed wrong, then they had a duty to mitigate and at whatever point the jury finds that is, that they should have acted October 1, you subtract the value of the policy at that time from the value on September 9th. But under their argument, they could still be playing the market. What made them do it on December the 11th? How about a year after that? When are they going to decide what figure we're going to subtract from $708,000 or $800,000 to get to that liquidated? That figure's not every day, Your Honor. Thank you, counsel. Thank you. The case will be submitted. Clerk will call the next case.